# manatt

Richard S. Hartunian
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4520
E-mail: RHartunian@manatt.com

August 24, 2020

**VIA ECF**

The Honorable Jesse Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

    Re:    Joint Letter Motion for Order Approving Redactions Individual Practice 7(C) in *Rosco v. Safety Vision*, No. 19-cv-8933

Dear Judge Furman:

    The parties in the above-referenced matter write jointly pursuant to Individual Practice 7(C) in support of an order permitting redaction of the transcripts of the depositions of Brandon Blood and Bruce Smith pursuant to the parties' stipulated protective order (Doc. 67). The parties agree that an order regarding redaction is appropriate, but disagree regarding its scope.

    Plaintiff Rosco, Inc. (Rosco) does not believe that any portion of either deposition requires redaction, but does not object to the designation by Safety Vision, LLC ("Safety Vision"), for the purposes of the pending motion, of certain sections of each deposition as "Highly Confidential." Safety Vision, LLC seeks to have other sections of each deposition redacted. Because the supplemental motions are due tomorrow, Tuesday, August 25, (Doc. 55), the parties set forth their respective positions in this joint letter rather than by filing a letter and a response. The parties met and conferred on August 21, 2020, and significantly narrowed the scope of redactions sought. The full transcripts of the depositions are being filed under seal along with this letter as Exhibit A and Exhibit B.[1]

    <u>Rosco's Position</u>

    At the conclusion of each deposition, Safety Vision designated the entire deposition "highly confidential." (Blood Transcript at 103:21–104:11; Smith Transcript at 115:5–22) After the depositions, the parties met and conferred, and Safety Vision agreed to limit its designation to "any competitive information regarding the sales database, identity of Safety Vision customers, the number of customers in various regions, and any specifics regarding SV's sales strategy, which would be highly confidential." (Exhibit C) The parties met and conferred after

---

[1] Only a rough transcript of the Blood deposition is currently available and that is what is being filed.

7 Times Square, New York, New York  10036   Telephone: 212.790.4500  Fax: 212.790.4545

Albany | Boston | Chicago | Los Angeles | New York | Orange County | Palo Alto | Sacramento | San Francisco | Washington, D.C.

manatt

The Honorable Jesse Furman
August 24, 2020
Page 2

the Smith deposition, and Safety Vision stated that it would limit its "highly confidential" designations regarding that deposition to the ownership structure of certain Latin American affiliates of Safety Vision and the internal organization of Safety Vision outside of the sales force. (Exhibit D)

Rosco believes that no material in either deposition is HIGHLY CONFIDENTIAL, defined as material which "if disclosed to another Party or non-party would create a substantial adverse impact on the producing Party's business, financial condition, ability to compete, standing in the industry, or any other risk of injury that could not be avoided by less restrictive means." (Doc. 67 at 2) Rosco does not believe that any material in either deposition qualifies as CONFIDENTIAL, which is defined as information that "qualifies for protection under standards developed under Rule 26(c) of the Federal Rules of Civil Procedure as non-public confidential and/or proprietary information." (Doc. 67 at 2) While there may be occasion to designate material as CONFIDENTIAL or HIGHLY CONFIDENTIAL during the merits phase of this patent matter, no testimony regarding venue is sufficiently confidential to overcome the presumption in favor of disclosure. *See Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119–20 (2d Cir.2006).

Nevertheless, in an effort to resolve this dispute, Rosco agrees that an order permitting redaction of the following sections of the depositions would be appropriate:

1) The name of Safety Vision's database (Blood 10:4)
2) Blood's credit card reimbursements (Blood Exhibit 10, attached as Exhibit E hereto under seal)
3) The ownership structure of the Latin American entities (Smith 37:2-39:13)

Rosco has written, pursuant to Section 11 of the confidentiality order, to contest the designations. Given the short time frame before filing the briefs, it also submits this joint letter seeking an order providing for limited redactions. A broader order sought by Safety Vision—for example, redacting customer names, even though Safety Vision advertises its customers on its website (*see, e.g.*, http://www.safetyvision.com/boyertown-area-school-district-implements-safety-visions-camera-system-school-buses-ensure-student)—would be wholly inappropriate.

The "burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997), citing *U.S. v. Amodeo*, 71 F. 3d 1044, 1047 (2d Cir. 1995). Safety Vision has not even tried to meet this burden. Safety Vision claims that the names and titles of employees are "highly confidential" even though a simple internet search shows that these employees identify themselves by name and title at Safety Vision on their professional social media profiles. It seeks to shield questions about hiring strategy which shouldn't even arguably be at issue. (see,

manatt

The Honorable Jesse Furman
August 24, 2020
Page 3

e.g., Smith Depo Tr. at 87:16-25) It also seeks to designate as "highly confidential" testimony about its vertical "sales strategy" (see, e.g., Smith Depo Tr. at 23:9–25:24; 88:16-24) even though 1) Safety Vision's public website clearly describes that strategy in separate web pages for each vertical industry sector, or 2) the information was so "high level" as to reveal nothing even arguably confidential (see, e.g., Smith Depo Tr. at 93:3–94:4).  The testimony about proprietary software revealed nothing because Mr. Smith claimed to know little about it.  (Smith Depo. Tr. at 90:8–91:11); indeed Safety Vision's publicly disseminated sales brochures explain more about this software than Mr. Smith did [See Exhibit F (Exhibit 7) to the deposition of Brandon Blood, at 3–4]

Safety Vision also claims that lines of questioning went beyond the limited scope of the deposition, but Safety Vision' counsel objected to many of these questions when they were posed, and those objections are preserved.  Rosco notes a key factor in the relevant inquiry—so important that it was included in the 30(b)(6) deposition notice—is "the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues"  *In re Cray Inc.*, 871 F.3d 1355, 1364 (Fed. Cir. 2017).  In any event, whether the questions were properly within the scope of the deposition is a different question than whether the responses were highly confidential sufficient to merit redaction.

Finally, it claims these designations are appropriate because Rosco "recruited" a Safety Vision employee.  This is not true.  The employee in question, John Marlow, left Safety Vision in April 2017, worked for another company until the summer of 2019, and only joined Rosco after that.

Safety Vision's Position

As stated in Rosco's position, the parties have met-and-conferred to limit and narrow down the highly confidential designations in the depositions of Safety Vision's employees.  Those depositions took place on August 17 and 18 last week, and the parties are still waiting on the official transcript of one of the depositions.  The questioning during the depositions went well outside the scope of venue and many questions were directed to Safety Vision's operations outside New York, its organizational structure, business units, the identity of Safety Vision executives and employees not based in New York and their specific roles and responsibilities, as well as Safety Vision's strategy and tactics to obtain new customers and maintain customer relationships.

Safety Vision is a direct competitor of Rosco in the competitive school bus segment of the mobile video surveillance industry. At least one Safety Vision employee was recruited by Rosco and there is a risk this information could be used to recruit others.  Indeed, Rosco has designated its two primary principal owners to receive and review Safety Vision's depositions

manatt

The Honorable Jesse Furman
August 24, 2020
Page 4

and its exhibits. Considering the sensitive competitive nature of this information, Safety Vision believes that in addition to items numbered 1 to 3 above, the following information should be treated as "highly confidential":

1) the identity of customers and potential customers not listed on Safety Vision's website (Blood 20:25 to 21:3)

2) the identity and roles of Safety Vision executives and vendors that are not identified on its website (Smith 15:23 to 17:5; 33:19-22, 41:12 to 42:1, 54:18-55:12, 59:8-16, 68:13-69:4)

3) the organizational and ownership structure of Safety Vision (Smith 10:13-24,

4) Safety Vision Latin American operations, management and structure (Smith 37:2-39:13, 45:15-46:12, 50:13 to 51:17)

5) Safety Vision's sales strategy, hiring strategy and propriety software (Smith 23:9 to 25:24, 87:16-24, 88:16-24, 90:8 to 91:11, 93:3 to 94:4, 103:25-105:12) (Blood 64:23 to 65:6, 70:16 to 71:11)

The above information is highly confidential information and could create a substantial adverse impact on Safety Vision's ability to compete with Rosco, in particular, and potentially others in the industry. Most of this information is well outside the scope of venue discovery and should not have been addressed during these depositions. Information regarding Safety Vision's various departments, the individuals running those departments and their roles therein, the size and scope of the departments, ownership structure, sales strategy and hiring strategy are all valuable confidential information that should not be provided to Rosco's two main principals.

Although most of this information would not be relevant to venue, Safety Vision does not know what, if any, such information Rosco will use in its submission on August 25. Moreover, its desire to share it with Rosco's two principals further underscores the need that this information be treated as highly confidential.

     Safety Vision suggests the Court reserve ruling on what should remain under seal until the briefs are submitted so that the parties can determine exactly what needs to remain redacted in the public filings.

     Sincerely,

Richard S. Hartunian                Sailesh Patel

The motion to seal is granted temporarily following Safety Vision's broader proposal.  The Court will decide whether and to what extent to keep the documents at issue redacted when deciding the underlying motion.  To the extent that they have not already done so, the parties are instructed to file redacted and highlighted, unredacted versions of the documents at issue on ECF (conforming to Safety Vision's proposal), in accordance with the Court's Individual Rules and Practices 7(C)(ii)-(iii).

The Clerk of Court is directed to terminate ECF No. 68.  SO ORDERED.

August 24, 2020