UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                                                         :

ROSCO, INC.,                                                         :

                                                          Plaintiff,                  :

                                                                                  :           19-CV-8933 (JMF)
                                 -v-                               :

                                                                                  :      MEMORANDUM OPINION
SAFETY VISION LLC, et al.,                                 :           AND ORDER

                                                                     Defendants.             :

------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Rosco, Inc. ("Rosco") brings patent infringement and other claims against Defendants Safety Vision, LLC ("Safety Vision") and Shenzhen Germid Electronic Technology Development Co., Ltd. ("Shenzhen Germid"). *See* ECF No. 52 ("SAC"), ¶¶ 36-117. Rosco is a New York corporation with its principal place of business in New York City that, among other things, engages "in the design, development and sale of mirrors, visors and other visual safety systems." SAC ¶¶ 1, 23, 25. Safety Vision is a Texas limited liability company with its principal place of business in Houston, Texas, and sells mobile video surveillance products. *See* ECF No. 32-2 ("Smith Decl."), ¶¶ 3-4. Shenzhen Germid is a Chinese manufacturing corporation with its principal place of business in Shenzhen, China. *See* SAC ¶¶ 4-5. On September 26, 2019, Rosco filed this lawsuit alleging that a product, manufactured by Shenzhen Germid and marketed and sold in the United States by Safety Vision, infringes upon its patents. *See* ECF No. 1, ¶¶ 1-5; SAC ¶¶ 1, 3, 5. On January 24, 2020, Safety Vision moved to dismiss Rosco's claims for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure or, in the alternative, for transfer to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). *See* ECF No. 32. The Court granted Rosco's request for leave to conduct

limited venue-related discovery on July 28, 2020, and ordered the parties to file supplemental briefs thereafter. *See* ECF No. 55. Upon review of the parties' supplemental briefs, the Court agrees with Safety Vision that venue is improper in the Southern District of New York and concludes that the case should be transferred to the Southern District of Texas.[1]

In a patent infringement action, venue is governed exclusively by the patent venue statute, 28 U.S.C. § 1400(b); *see TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1516 (2017), which must be interpreted in accordance with the law of the Federal Circuit, *see In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). "[U]pon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue." *Id.* Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in [1] the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Here, there is no dispute that Safety Vision "resides" in the Southern District of Texas. *See* SAC ¶ 2; *see also TC Heartland*, 137 S. Ct. at 1517. Thus, for venue to lie in the Southern District of New York for the patent infringement claims against Safety Vision, the second prong of Section 1400(b) must apply.[2] To determine whether it applies, courts employ a

---

[1] On a motion to dismiss for improper venue, a court generally accepts as true the factual allegations in the non-moving party's pleadings and draws all reasonable inferences in favor of the party opposing the motion. *See, e.g.*, *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007); *Vann v. Fischer*, No. 11-CV-1958 (JPO), 2012 WL 2384428, at *4 (S.D.N.Y. June 21, 2012). A court, however, may consider facts and documents outside the complaint. *See, e.g.*, *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 211 (2d Cir. 2014). Accordingly, the facts contained herein are drawn from the Second Amended Complaint, attached materials, and affidavits and admissible materials submitted by the parties.

[2] Defendant Shenzhen Germid was not served with the summons and operative Complaint until August 7, 2020, *see* ECF No. 62, and has not yet responded to the Complaint, *see* ECF No. 80. In any event, as a foreign corporation, venue is proper as to Shenzhen Germid in any district,

three-part test: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). At issue here is the third requirement: whether the Southern District of New York is "a place *of the defendant*, not solely a place of the defendant's employee." *Id.* at 1363. To determine whether the place of business is "of the defendant," courts employ a holistic analysis in which "no one fact is controlling." *Id.* at 1366. Relevant factors include "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place"; "whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place"; "[m]arketing or advertisements . . . to the extent they indicate that the defendant itself holds out a place for its business"; "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself"; and "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues." *Id.* at 1363-64.

Applying these standards to the present case, the Court finds that Rosco fails to carry its burden of showing that the Southern District of New York is a "place of" Safety Vision for purposes of Section 1400(b). Rosco contends that Safety Vision maintains a "satellite office" located at its employee Brandon Blood's "rental apartment in Manhattan." ECF No. 34, ("Pl.'s Opp."), at 9 (internal quotation marks omitted). But the record — including the evidence

---

*see In re HTC Corp.*, 889 F.3d 1349, 1361 (Fed. Cir. 2018), so its presence in this litigation does not impact the venue analysis that follows.

obtained as part of venue-related discovery — demonstrates that this apartment was a "place of the defendant's employee" rather than a "place *of the defendant*."  *In re Cray*, 871 F.3d at 1363.  Blood, not Safety Vision, pays for the apartment.  *See* ECF No. 74-3 ("Blood Dep."), at 101; ECF No. 40-1 ("Second Smith Decl."), ¶ 9.  Contrary to Rosco's initial theory that Blood agreed to move to New York City at Safety Vision's request, *see* Pl.'s Opp. 12, it was Blood who first suggested to Safety Vision that he move to New York, *see* Blood Dep. 18-19, 100-01.  And Safety Vision did not incentivize Blood's move to New York or reimburse his moving expenses.  *See id.* at 18-19, 45, 100-01; Second Smith Decl. ¶ 10.

Notably, Blood has already moved apartments within New York, without requesting or receiving permission from Safety Vision, *see* Blood Dep. 101-02, and Safety Vision explains that "it doesn't matter" where within the northeast region, encompassing at least ten different states, "Blood chooses to reside."  Second Smith Decl. ¶ 11; *see* Blood Dep. 102-03; *see also In re Cray*, 871 F.3d at 1363 ("[I]f an employee can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant."); *Zaxcom, Inc. v. Lectrosonics, Inc.*, No. 17-CV-3408 (NGG) (SJB), 2019 WL 418860, at *5 (E.D.N.Y. Feb. 1, 2019) ("Plaintiff has not demonstrated that [the employee's] employment is conditioned on his continued residence in the district." (internal quotation marks omitted)).  Additionally, "all expense reimbursements and administrative support for" Blood are "provided from outside of the district," *In re Cray*, 871 F.3d at 1365; *see* Second Smith Decl. ¶ 14; Safety Vision's website and marketing materials nowhere list Blood's New York address, *see* Second Smith Decl. ¶ 13; and Blood's business cards and email signature display only Safety Vision's Houston office address, *see* ECF Nos. 74-5 and -6.  Although Blood's email signature does include a New York

4

cellphone number and states "*operating out of New York, NY," *see* ECF No. 74-6, these facts "indicate at most that he conducted business from the [Southern District of New York], not that [Safety Vision] established a place of business there." *In re Cray*, 871 F.3d at 1365-66; *see also Zaxcom*, 2019 WL 418860, at *6.

Rosco's argument for venue here hinges largely on the fact that "Safety Vision represented on its website, in text and with dotted maps, that its Satellite offices are strategically positioned in . . . [locations across the country, including] New York . . . ." ECF No. 70 ("Pl.'s Supp. Opp."), at 14 (internal quotation marks omitted). "But the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location." *In re Cray*, 871 F.3d at 1364. Assuming without deciding that marketing copy describing "satellite offices" without specifying addresses — or even the cities in which they are located, ECF No. 72-7; ECF No. 37-3 — constitutes the advertisement of an office, Rosco fails to show that *Safety Vision* "actually engage[s] in business from" the New York location. *In re Cray*, 871 F.3d at 1364. Although Blood "uses a computer that was provided to him by Safety Vision to access a Safety Vision database that contains sales leads that Safety Vision has obtained," Pl.'s Supp. Opp. 7, that does not tip the scales in Rosco's favor given that "the[se] reimbursements and support were not conditioned on any particular employee location," *In re Cray*, 871 F.3d at 1365; *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 552 (S.D.N.Y. 2018) ("The fact that [the defendant employer] reimburses all of its employees for ordinary, reasonable, and necessary expenses and mobile phones and vehicle use does not cut in favor of jurisdiction, as it does not

appear that such reimbursements were conditioned on employees living in a certain area." (internal quotation marks omitted)).

*RegenLab*, upon which Rosco relies, is distinguishable. There, the court repeatedly emphasized that "[*a*]*ll* [of the defendant's] employees work out of their homes," which meant that "home offices constitute a primary physical location for [the defendant's] business." *RegenLab.*, 335 F. Supp. 3d at 549. Here, by contrast, "Safety Vision's management team and more than 90% of its employees are located in Houston, Texas," with the only employees not located at that office consisting of "remote sales associates or installation technicians." Second Smith Decl. ¶ 4. Thus, the situation here is far more analogous to the one in *Zaxcom*, where the defendant's "business model [was] to have, in addition to its staff at its headquarters in New Mexico and an office in Toronto," regional sales representatives working remotely. 2019 WL 418860, at *7 (distinguishing *RegenLab* on the same basis). And although Rosco makes much of the fact that "Blood maintains a supply of Safety Vision brochures in his New York workplace, which he uses when he makes in-person calls on customers," Pl.'s Supp. Opp. 9, a closer examination of Blood's deposition testimony reveals that while he has "a hand full" of brochures at a time, he "[r]arely" brings copies of the brochure on sales calls because the relevant information is available online and he generally "tr[ies] not to carry brochures," Blood Dep. 41-43. These facts are again distinguishable from those in *RegenLab*, where each employee maintained a "sales kit" at his or her home as well as "a small centrifuge and other accessories" that the employee was required to use "to conduct demonstrations" when the company's "products arrive at a customer's home." 335 F. Supp. 3d at 552. In sum, although "no one fact is controlling," the facts here, "taken together," do not support a finding that Safety Vision

6

established a regular place of business in the Southern District of New York.  *In re Cray*, 871 F.3d at 1366.[3]

The only remaining question is whether to dismiss the case or, as Safety Vision requests in the alternative, to transfer it to the Southern District of Texas, where venue is plainly proper pursuant to the first prong of Section 1400(b).  It is well established that where, as here, venue is improper, a court "retains discretion to decline to dismiss the case in the interests of justice in favor of a transfer to any district where the case could initially have been brought."  *Catlin Indem. Co. v. New Eng. Law/Bos.*, No. 15-CV-4836 (JMF), 2016 WL 447849, at *3 (S.D.N.Y. Feb. 4, 2016) (internal quotation marks omitted).  In deciding whether transfer would serve the interest of justice, courts in this Circuit are guided by the following factors: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based upon the totality of the circumstances.  *See id.* (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d

---

[3]    Rosco requests in its supplemental brief that the Court draw three adverse inferences pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure based on Safety Vision's Rule 30(b)(6) witness's alleged failure to prepare for his deposition, *see* Pl.'s Supp. Opp. 13-16, or alternatively, to depose additional witnesses to establish the same, *see id.* at 15-16.  Safety Vision, in turn, sought leave to respond to Rosco's Rule 37(b)(2) arguments in formal briefing.  *See* ECF No. 76.  The Court need not resolve these requests because it determines that even if it were to draw the requested adverse inferences — namely that Safety Vision's website and brochures established that it "had strategically positioned Satellite Offices in [different locations around the country] to serve its customers better" and that "Safety Vision hired the Account Executives that were based in Indiana, Florida, North Carolina, and Missouri based on advertisements that were placed in those markets for sales positions based in those states," Pl.'s Supp. Opp. 15 — it would not change the outcome of the Court's holistic analysis of whether Safety Vision has a regular and established place of business of the defendant in this District.

102, 112 (2d Cir. 2010)).  Substantially for the reasons stated in Safety Vision's briefs, *see* ECF No. 32-1 at 11-21; ECF No. 74 at 10-11, the Court concludes that these factors call for transferring the case rather than dismissing outright.  Additionally, dismissal would require Rosco to file a new action and pay another filing fee, while "transfer will allow this action to proceed in [an appropriate] forum and lead to [an] adjudication on the merits."  *Blauschild v. Tudor*, 31 F. Supp. 3d 527, 533 (E.D.N.Y. 2014) (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, Safety Vision's motion to transfer this case to the Southern District of Texas is GRANTED.  Additionally, the Court approves the redactions temporarily approved at ECF Nos. 67 and 69, for substantially the reasons stated at ECF Nos. 65 and 68 and because the Court did not need to rely on the redacted material to decide the underlying motion. The Clerk of Court is directed to terminate ECF No. 32, to transfer this case to the Southern District of Texas, and to close the case in this District.

SO ORDERED.

Dated: September 18, 2020
New York, New York

JESSE M. FURMAN
United States District Judge

8